IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAFAEL A. JOSEPH | : | CIVIL ACTION |
| | : | NO. 14-3940 |
| v. | : | |
| | : | |
| SAFEHAVEN CEC, et al. | : | |

O'NEILL, J.                                                                                          September 9, 2015

## MEMORANDUM

Plaintiff Raphael Joseph, proceeding pro se, claims violations of his constitutional rights arising out of his stay at defendant Safe Haven CEC.  In addition to Safe Haven, plaintiff asserts claims against Angela Wright, "in her capacity as director," Caesar Emmanuel, "in his capacity [as a] social worker or case manager," Deborah Savage, "in her capacity as assistant director and lead case manager," the Philadelphia VA Medical Center, and Donald Gallagher,[1] "Liason between VA and Safehaven."  Dkt. No. 3 at 1.  Now before me are a motion to dismiss plaintiff's claims by defendants Safe Haven CEC, Angela Wright and Deborah Savage (the "Safe Haven defendants"), Dkt. No. 11, and plaintiff's response thereto.  Dkt. No. 12.  Also before me are a motion to dismiss by the Philadelphia VA Medical Center and Donald Gallagher (the "Federal defendants"), Dkt. No. 15, and plaintiff's response thereto.  Dkt. No. 17.  For the reasons that follow, I will grant both motions to dismiss.

## BACKGROUND[2]

Plaintiff, who asserts that he "is a black male, national origin (Panama Central America)," Dkt. No. 4 at ECF p. 5, alleges that he was a resident at Safe Haven "from April 4,

---

[1] There is no proof of service on Gallager on the docket.  The Federal defendants assert that "[t]he defense of failure to serve the complaint is preserved, and not waived, by the filing of [their] motion."  Dkt. No. 15 at ECF p. 3.

[2] In light of plaintiff's pro se status, I will here consider the allegations set forth in both plaintiff's complaint and his amended complaint.

2013 to July 31, 2013," after having "found himself homeless after 33 years of government service." Dkt. No. 3 at ECF p. 3.  He claims that "he had 33 years of service:  25 with the United States Postal Service, 3 years military service-Honorable Discharge, and 5 years with the Panama Canal Commission." Id. at ECF p. 4.  Plaintiff avers that he "was referred to Safehaven[3] CEC in April 2013, because he met the requirements established in 'The Mckinney Homeless Assistance Act' as amended by . . . The Homeless Emergency Assistance and Rapid Transition to Housing (Hearth) Act of 2009." Dkt. No. 4 at ECF p. 2.  According to a letter from Safe Haven which plaintiff attached to his complaint, Safe Haven is a facility where homeless veterans can address "their psychological issues, and their addiction issues and to stabilize their homelessness." Dkt. No. 3 at ECF p. 20 (Compl. Ex. D).  Plaintiff alleges that his "homeless condition was not caused by any substance abuse problem or mental issues." Id. at ECF p. 3-4.  Instead, plaintiff claims that "[e]veryone knew that plaintiff was homeless and penniless because of the circumstances that had happened with [his] previous employer and needed legal help." Id. at ECF p. 4.  Plaintiff alleges that he "was forced to resign" from his prior employment because "harassment and discrimination was so pervasive." Id.

At Safe Haven, plaintiff was "assigned a Case Manager, Emmanuel Caesar, to assist in assuring that [he] w[as] connected to services at the VA and to prepare [him] for the next level in [his] journey to obtain safe, affordable housing." Id. at ECF p. 20 (Compl. Ex. D).  Plaintiff claims that defendant Caesar "started to ask for paperwork" to enroll plaintiff in the HUD-VASH program but that Caesar "would not sign [him] up for the program." Dkt. No. 4 at ECF p. 2.  He claims he sought to speak with defendant Savage who "requested that plaintiff update his paperwork on his income verification" but that she "would not respond to plaintiff if the updated

---

[3]  Defendant Safe Haven refers to itself using two words.  Plaintiff refers to defendant Safe Haven as Safehaven.  I have preserved plaintiff's designation in quoted language in this Opinion.

information was acceptable." Id. at ECF p. 2-3.  Plaintiff alleges that he spoke to defendant Angela Wright "and was offered to enter a program at IMPACT by the case managers of the VA," but he "refused to enter the program" because his "problems were legal problems not substance abuse."[4]  Dkt. No. 3 at ECF p. 3.  He alleges that he "was told by Mr. Caesar, Ms. Savage and Ms. Wright that they could not give [him] legal advice yet they help other residents get their VA, Social Security, HUD VASH and Welfare Benefits." Id. at ECF p. 4.

On June 6, 2013, defendant Savage wrote plaintiff a letter explaining "[i]t ha[d] become apparent that the Case Management offered at Safe Haven is not able to assist [plaintiff[ in setting or meeting any goals or objectives that [he] may have in moving forward." Id. at ECF p. 20 (Compl. Ex. D).  Accordingly, the letter notified plaintiff that "it ha[d] been determined that [he] w[ould] be discharged from Safe Haven on July 10, 2013 if [he] fail[ed] to 1) address [his] mental health issues, [and] 2) provide [his] Case Manager with clear thought out goals and objectives that he c[ould] assist [plaintiff] in obtaining, particularly housing options." Id. Plaintiff alleges that he "left with nowhere to stay" and that he "left without getting no help [sic] to look for any time of housing.  The case managers gave me a list of rooms and apartments available and was told that is all the help they could offer." Id. at ECF p. 9.  He contends, however, that "[o]ther residents were given rides to look at apartments, vouchers for furniture or offered other options or shelters they could stay at." Id.

Plaintiff alleges that he "is the only person from Panama that was not afforded his benefits while at Safehaven" and that "defendants would make benefits or protections available to the residents that were born in the United States." Dkt. No. 4 at ECF p. 6.  He claims that defendants "denied to enroll plaintiff in the HUD-VASH program, this caused plaintiff the los[s]

---

[4] Plaintiff contends that he "assumes that [his] case was discussed with the liaisons and case managers at the VA and they determined that he should attend a program at IMPACT for substance abuse." Dkt. No. 3 at ECF p. 4-5.

of stable housing and [defendants] disposed of plaintiff['s] personal property without notification . . . ." Id.

On April 12, 2013, plaintiff had executed an Authorization for Release of Personal Property which explained that he authorized his sister Senia Franklin and/or his family friend Edith Lovell "to receive [his] personal property in the event [he] fail[ed] to complete the program at MinSec Safe Haven." Dkt. No. 3 at ECF p. 12 (Compl. Ex. A.). The release also provided:

> Furthermore, I understand that MinSec Safe Haven will retain my
> property for a maximum of seven (7) days upon involuntary
> discharge from the program. I will hold MinSec Safe Haven and
> it's [sic] employees harmless in the event my property is lost,
> damaged, or destroyed. I understand that a letter for pickup of my
> personal belongings will be mailed via certified mail to the
> addresse [identified on the authorization.]

Id. Plaintiff claims that during the week of August 5, 2013, he returned to Safe Haven to retrieve "some" of his personal property and that he informed "Rob and Ms. Reynolds . . . that he would be returning at a later date for the rest of his belongings." Dkt. No. 4 at ECF p. 3. Plaintiff maintains that after he left Safe Haven and before disposing of his belongings, defendants "did not call [him, his] emergency contacts or the people on the Authorization for Release of Personal Property." Dkt. No. 3 at ECF p. 5. On September 2, 2013, in a letter to defendant Angela Wright at Safe Haven, plaintiff explained:

> As per our conversation on Fri. Aug. 30, 2013, I was informed that
> the clothing items that I had stored at Safehaven had been removed
> and thrown away because you needed the space to store more
> items. I was told I could complain to the VA because the items
> were gone and there was no sense in discussing the matter any
> further.

Dkt. No. 3 at ECF p. 15. (Compl. Ex. B). Plaintiff identified the items which were disposed of as including:

> 1) A knit cap that my aunt gave me on a trip back to Panama in 2003, my aunt [h]as passed since, that means that cap can never be replaced.
> 2) My passport, I kept it in a shoulder bag which I put in the suitcase.
> 3) A letter from the governor of New Mexico, thanking me for submitting an idea about school safety and gun control.
> 4) Coupons and a letter from Kentucky Fried Chicken, apologizing for the treatment that I received at one of their stores in Las Cruces, NM.
> 5) Research done by Inventech on one of my ideas, this research cost me $1,000, this is research about other ideas similar to mine worldwide and probabilities and markets for my ideas and much more information.

Id.  In his letter to Wright, plaintiff claimed that he "was told by Ms. Reynolds that [he] had up to 30 days to retrieve my belongings . . . ." Id.

In his complaint plaintiff asserts that he

> is seeking in this matter $50,000 in compensatory damages that includes the $1,000 to Inventech for the research they did on my idea, that idea could have potentially made me a fortune.  $10,000 in incidental damages plaintiff had to buy new winter jacket, summer clothes and incidentals.  Had to look for apartments with no help from defendants; had to pay own transportation, food and cost associated with this search.  $15,000 punitive damages some of these items can never be replaced or plaintiff can never be fully compensated for these items.[5]

Dkt. No. 3 at ECF p. 9-10.

## STANDARD OF REVIEW

To survive defendants' motions to dismiss pursuant to Rule 12(b)(6), plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

---

[5] Rule 5.1.1 of the Local Rules of Civil Procedure provides that "no pleading asserting a claim for unliquidated damages shall contain any allegation as to the specific dollar amount claimed, but such pleadings shall contain allegations sufficient to establish the jurisdiction of the Court." E.D. Pa. Local R. Civ. P. 5.1.1.  Because the Court's jurisdiction in this case is based on the existence of a federal question, he need not plead a specific amount-in-controversy.  Accordingly, any amended complaint shall not include a request for a specified amount of damages.

is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In evaluating defendants' motions, I must separate the legal and factual elements of plaintiff's claims, accept the well-pleaded factual allegations as true and disregard any legal conclusions.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  I "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  Id. at 211, quoting Iqbal, 556 U.S. at 679.  A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Id. at 679, quoting Fed. R. Civ. P. 8(a)(2).  Where, as here, plaintiff is proceeding pro se, I have "an obligation to construe the complaint liberally."  Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009).  Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013).

## DISCUSSION

### I.   Federal Defendants' Motion

The Federal defendants move to dismiss all claims directed against them.  In his response to their motion, plaintiff argues that "[t]he VA should have known [and] Mr. Gallagher knew of the actions that Ms. Wright and the staff at Safehaven took, by disposing of [his] personal property unlawfully and denying plaintiff his HUD-VASH benefits."  Dkt. No. 17 at 1.  He contends that "Mr. Gallagher as liaison and VA Philadelphia are equally responsible for the actions that were taken at Safehaven CEC."  Id.

To the extent plaintiff asserts claims for money damages against the Department of Veterans Affairs or the Veterans Affairs Medical Center or against Gallagher in his official capacity, his claims are barred by the Eleventh Amendment[6] and the doctrine of sovereign immunity. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." FDIC v. Meyer, 510 U.S. 471, 475 (1994). The United States has not waived immunity for suits seeking money damages for alleged constitutional violations. See id. at 478; see also Mierzwa v. United States, 282 F. App'x 973, 976-77 (3d Cir. 2008) ("Neither the United States nor its agencies have waived sovereign immunity for constitutional claims.").

Moreover, to the extent that plaintiff's complaint or amended complaint can be construed as asserting a claim for injunctive relief against the Federal defendants, it likewise fails to state a claim. In Ex Parte Young, 209 U.S. 123 (1908), the Supreme Court carved out a limited exception to Eleventh Amendment sovereign immunity, in which "individual state officers can be sued in their official capacities for prospective injunctive and declaratory relief to end continuing or ongoing violations of federal law." MCI Telecomm. Corp. v. Bell Atl.-Pa., 271 F.3d 491, 506 (3d Cir. 2001). However, plaintiff, who is no longer housed at Safe Haven and whose belongings have already been removed, has not alleged an ongoing violation of his rights.

Federal defendants also contend that plaintiff's complaint fails to state a claim for a violation of his constitutional rights as against defendant Gallagher in his individual capacity. I agree. It is well established that a defendant must have personal involvement in the alleged wrongs to be held liable under § 1983. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of

---

[6] The Eleventh Amendment to the United States Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign state." U.S. Const. amend. XI.

actual knowledge and acquiescence" and such allegations "must be made with appropriate particularity." Id.  The only specific allegation plaintiff makes against Gallagher is that Gallagher did not respond "after he received the fax that [Safe Haven] had disposed of my personal property." Dkt. No. 3 at ECF p. 5.  Plaintiff contends that Gallagher's inaction resulted in the violation of his Fourteenth Amendment right to due process. Dkt. No. 17 at ECF p. 2. However, "the mere fact that an official receives and reviews a letter . . . is insufficient to establish personal involvement (i.e., failure to respond or react does not establish that the official endorsed or acquiesced in the conduct at issue)." Hennis v. Varner, No. 12-646, 2014 WL 1317556, at *9 (W.D. Pa. Mar. 31, 2014).  Without more, plaintiff has not sufficiently alleged a plausible claim that Gallagher should be held liable for a violation of plaintiff's Fourteenth Amendment right to due process.

Moreover, even if plaintiff's allegations were sufficient to plead Gallagher's personal involvement, Gallagher would be entitled to qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009), quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity is "broad in scope and protects 'all but the plainly incompetent or those who knowingly violate the law.'" Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007), citing Couden v. Duffy, 446 F.3d 483, 501 (3d Cir. 2006).  Even assuming arguendo that plaintiff has alleged a constitutional deprivation, his allegations provide no basis for concluding that Gallagher had reason to know that, by failing to respond to plaintiff's faxed letter to Wright, he was violating one of plaintiff's clearly established rights.  I will grant the Federal defendants' motion to dismiss.

**II.     Safe Haven Defendants' Motion**

The Safe Haven defendants also move to dismiss all claims directed against them. Plaintiff claims that they:  (1) violated his rights to due process under the Fifth and Fourteenth Amendments of the United States Constitution; (2) violated his right to Equal Protection because plaintiff was discharged from Safe Haven and his application was not submitted to the HUD-VESH program because of plaintiff's race and national origin; (3) violated the Homeless Emergency Assistance and Rapid Transition to Housing Act of 2009 (HEARTH) by discharging plaintiff from Safe Haven and not submitting his application to the HUD-VESH program; (4) engaged in a civil conspiracy; and (5) violated "Act 129 of 2012 the Abandoned Property Bill Act," a 2012 Amendment to a Pennsylvania state law known as the Landlord and Tenant Act of 1951.

**A.     Monell Liability**

Plaintiff fails to state a claim against defendant Safe Haven CEC pursuant to section 1983 because he has not sufficiently alleged that any constitutional deprivations he claims were the result of a Safe Haven custom or policy.  Section 1983 provides for the imposition of liability on any person who, acting under color of state law, "deprives another of rights privileges or immunities secured by the Constitution or laws of the United States."  42 U.S.C. § 1983.  "Under Monell v. Dep't of Social Services, 436 U.S. 658 (1978), a city, municipality, or private entity that is a state actor 'may not be held vicariously liable under § 1983 for the actions of its agents' because '[t]here is no respondeat superior theory of municipal liability.'"  Regan v. Upper Darby Tp., 363 F. App'x 917, 922 (3d Cir. 2010), quoting Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006).  As a private entity that is acting under color of state law, Safe Haven may be held liable "only if its policy or custom is the 'moving force' behind the constitutional violation."  Sanford,

456 F.3d at 314.

Plaintiff alleges no facts which are sufficient to establish that CEC has a policy or custom of denying constitutional rights to the individuals in its care. "When 'challenging the constitutionality of a policy . . .' a plaintiff is not required to 'allege a sequence of constitutional deprivations; the claim that the policy resulted in the plaintiff suffering such a deprivation satisfies Monell.'" Doby v. DeCrescenzo, 171 F.3d 858, 868 (3d Cir. 1999), quoting Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990). However, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing . . . policy, which policy can be attributed to a municipal policymaker." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985) (plurality opinion). This is because "a single incident of . . . misbehavior by a single [person] is insufficient as sole support for an inference that a municipal policy or custom caused the incident." Id. at 832 (Brennan, J., concurring); see also Brown v. City of Pittsburgh, 586 F.3d 263, 292 (3d Cir. 2009).

Plaintiff's allegations are not sufficient to show that Safe Haven had an official policy, practice, usage, or custom in place that caused him harm. He claims only: (1) that CEC disposed of his personal belongings before contacting the individuals identified on his Authorization for Release of Personal Property: and (2) that he was denied referral to the HUD-VASH program while other Safe Haven Residents received referrals. Standing alone, these allegations are insufficient to raise a viable claim pursuant to Monell. See, e.g., Williams v. Fields, No. 09-0781, 2009 WL 3497772, at *3 (E.D. Pa. Oct. 27, 2009) (finding no Monell liability where the plaintiff failed to allege a relevant policy or custom); Silverman v. Physician Health Service--SCI-Waymart, No. 08-01841, 2009 WL 1324039, at *3 (M.D. Pa. May 11,

2009) (finding no Monell liability where the plaintiff's allegations "merely identif[ied] what appears to be an isolated incident").  Accordingly, I will dismiss plaintiff's Section 1983 claims against Safe Haven with leave to amend to the extent that plaintiff is able to allege facts sufficient to support the imposition of Monell liability against Safe Haven.

### C. Equal Protection

Plaintiff contends that he was denied equal protection because of his race or national origin.  "To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiff[ ] must prove the existence of purposeful discrimination. [He] must demonstrate that [he] received different treatment from that received by other individuals similarly situated." Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 196 (3d Cir. 2009), quoting Andrews v. City of Phila., 895 F.2d 1469, 1478 (3d Cir. 1990).  A plaintiff's failure to "allege any facts showing that he was treated differently than any similarly situated individuals" is fatal to his equal protection claim.  Slavoski v. Pawlowski, 462 F. App'x 215, 218 (3d Cir. 2012).

Plaintiff alleges that "[e]ach time plaintiff met someone he was asked the same question 'where is he originally from.'  Plaintiff noticed that no one else was asked this question by staff and other residents."  Dkt. No. 3 at ECF p. 7.  He claims that he "is the only person from Panama that was not afforded his benefits while at Safehaven" and that "defendants would make benefits or protections available to the residents that were born in the United States."  Dkt. No. 4 at ECF p. 6.  But plaintiff does not allege that these other residents were similarly situated to him and his conclusory allegations are thus insufficient to permit the Court to infer a plausible claim that any the denial of benefits which plaintiff claims was due to a denial of equal protection.  I will dismiss his equal protection claim with leave to amend

-11-

### B. Due Process

Plaintiff contends that the Safe Haven defendants violated his right to due process because they disposed of his personal belongings without advance notice. See Dkt. No. 4 at ECF p. 1-2. The Safe Haven defendants argue that they did not deny plaintiff of his right to due process because it is plaintiff who "failed to take proper steps to secure his property in the time Plaintiff agreed upon." Dkt. No. 11 at 12. They assert that "[p]laintiff abandoned his property and signed an agreement stating that leaving his property at Safe Haven for more than seven (7) days would result in his property being discarded." Dkt. No. 11 at ECF p. 13, citing Dkt. No. 3 at ECF p. 12-13 (Compl. Ex. A.).

"Procedural due process guarantees that a state will not deprive an individual of a protected interest in property without due process of law . . . ." Aultman v. Cmty. Educ. Centers Inc., 606 F. App'x 665, 668 (3d Cir. 2015). "The essential requirements of any procedural due process claim are notice and the opportunity to be heard." Zappan v. Pennsylvania Bd. of Prob. and Parole, 152 F. App'x. 211, 220 (3d Cir. 2005). To establish a prima facie case of a procedural due process violation plaintiff "must allege state sponsored deprivation of a protected interest in life, liberty or property. If such an interest has been or will be deprived, procedural due process requires that the governmental unit provide the individual with notice and a reasonable opportunity to be heard." Rusnak v. Williams, 44 F.. App'x. 555, 558 (3d Cir. 2002) (citation omitted).

Although it is unfortunate that plaintiff has been deprived of his personal property, property which he alleges included irreplaceable items and items of sentimental value, he has not sufficiently alleged a plausible violation of his right to due process. When plaintiff signed the Authorization for Release of Personal Property on April 12, 2013, plaintiff agreed that "Safe

Haven w[ould] retain his property for a maximum of seven (7) days upon involuntary discharge from the program." Dkt. No. 3 at ECF p. 12. Plaintiff left Safe Haven on July 31, 2013, id. at ECF p. 3, and returned and reclaimed some of his property on August 5, 2013. Dkt. No 4 at ECF p. 3. Plaintiff had notice of Safe Haven's property disposition procedure prior to his separation from the facility and he had an adequate opportunity to return to Safe Haven to reclaim his belongings. I will dismiss his due process claim.

### D.     Civil Conspiracy

Subsection (3) of Section 1985 provides a cause of action against a person who conspires "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). Plaintiff alleges that "[t]he defendants conspired to deprive [him] of 'life, liberty and the pursuit of happiness.'" Dkt. No. 4 at ECF p. 6. He directs his conspiracy claim against all defendants. His allegations about defendants' conspiracy are conclusory at best. Further, he makes no allegations of any actions which would demonstrate an actual agreement to conspire. "Mere conclusory allegations that a conspiracy existed will not survive a motion to dismiss." Boykin v. Bloomsburg Univ. of Pa., 893 F. Supp. 409, 418 (M.D. Pa. 1995), citing Rogin v. Bensalem Twp., 616 F.2d 680, 696 (3d Cir. 1980), aff'd without op., 91 F.3d 122 (3d Cir. 1996). I will dismiss plaintiff's civil conspiracy claim.

### D.     HEARTH Act

To the extent that plaintiff seeks to assert a claim that defendants violated the HEARTH act, his claim cannot withstand their motion to dismiss. The HEARTH Act "reauthorized the McKinney–Vento Homeless Assistance Act, which aimed 'to provide funds for programs to assist the homeless, with special emphasis on elderly persons, handicapped persons, families

with children, Native Americans, and veterans.'" Richardson v. City of N.Y., No. 12-2545, 2013 WL 2124176, at *3 (S.D.N.Y. Apr. 17, 2013) quoting 42 U.S.C. § 11301(b). But, as the Court explained in Richardson, "the HEARTH Act does not create enforceable individual rights." 2013 WL 2124176, at *3. Plaintiff may not seek to recover under the HEARTH Act because "where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." Gonzaga Univ. v. Doe, 536 U.S. 273, 286 (2002).

### F. Abandoned Property

Plaintiff also claims that defendants violated "Act 129 of 2012 the Abandoned Property Bill Act." Dkt. No. 4 at ECF p. 1. The Safe Haven defendants construe plaintiff's amended complaint as asserting a claim under a 2012 amendment to the Pennsylvania Landlord and Tenant Act of 1951. Dkt. No. 11 at ECF p. 11. I decline to exercise supplemental jurisdiction over this claim. A district court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Court of Appeals instructs that "where the claim[s] over which the district court ha[ve] original jurisdiction [are] dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995). No such considerations are present here.[7] Accordingly, I will dismiss plaintiff's state law claim.

An appropriate Order follows.

---

[7] Even if there were, liberally construing the allegations in plaintiff's complaint and amended complaint, "the Landlord and Tenant Act of 1951 does not apply to Plaintiff as he did not lease or otherwise take possession of any real property at Safe Haven." Dkt. No. 11 at ECF p. 11.