IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAFAEL A. JOSEPH | : | CIVIL ACTION |
| | : | NO. 14-3940 |
| v. | : | |
| | : | |
| SAFEHAVEN CEC, et al. | : | |

O'NEILL, J.                                                                                                  February 22, 2016

## MEMORANDUM

Now before me are two motions to dismiss plaintiff Raphael Joseph's second amended complaint, Dkt. No. 20: a motion by defendants Safehaven CEC, Angela Wright and Deborah Savage (the Safe Haven defendants), Dkt. No. 23; and a motion by defendants Donald Gallagher and the Philadelphia VA Medical Center (the Federal defendants). Dkt. No. 25. Also before me are plaintiff's responses to the motions. Dkt. Nos 24, 27. For the reasons that follow, I will grant defendants' motions.

## BACKGROUND

On September 9, 2015, the Court dismissed plaintiff's claims and granted him "leave to amend his Monell claim "to the extent that plaintiff is able to allege facts sufficient to support the imposition of Monell liability against Safe Haven," Dkt. No. 11 at ECF p. 14, and his equal protection claim "only to the extent that he is able to allege sufficient facts to support his claim that any of the Safe Haven defendants violated his right to equal protection." Dkt. No. 19 at ECF p. 1. Plaintiff, who is proceeding pro se, was not granted leave to amend his claims against the Federal Defendants. Dkt. No. 18 at ECF p. 8 (holding that "even if plaintiff's allegations were sufficient to plead Gallagher's personal involvement, Gallagher would be entitled to qualified immunity").

Plaintiff's second amended complaint, filed on October 2, 2015,[1] is also captioned as a "Response to Memorandum." Dkt. No. 20 at ECF p. 1. Plaintiff asserts that "in response to [the] Memorandum dated September 9, 2015 in which the court[ ] granted defendants['] motion[s] to dismiss, the plaintiff requests that the court reverse its decision and ultimately render a decision of 'summary judgment' in favor of the plaintiff." Id. Plaintiff contends that "[t]he prima facie evidence presented by this plaintiff will show that VA knew or should have known of . . . all the violations or actions taken at Safe Haven when they disposed of my personal property, and refused to refer me to the Hud Vash program." Id. He asserts that "[t]he policies that were followed at Safe Haven were all dictated by the VA. They had to consult with the Veterans Administration Hospital before issuing the letter discharging me from Safe Haven." Id. at ECF p. 1-2. Liberally construing plaintiff's second amended complaint, it reasserts alleged violations of his constitutional rights under the Fifth and Fourteenth Amendments arising out of his stay at defendant Safehaven CEC. Plaintiff also appears to assert a due process claim related to his involuntary discharge from Safe Haven.

Plaintiff, who has previously alleged that he "is a black male, national origin (Panama Central America)," Dkt. No. 4 at ECF p. 5, asserts that he was a resident at Safe Haven "from April 4, 2013 to July 31, 2013, after being homeless for 2 years due to the actions of other government agencies." Dkt. No. 20 at ECF p. 2. Safe Haven "is a 24-hr/7-days-a-week community-based early recovery model of supportive housing." Id. at ECF p. 4. He alleges that

---

[1] In light of plaintiff's pro se status, I will consider the allegations set forth in plaintiff's complaint and his amended complaint as if they were incorporated in his second amended complaint. In deciding defendants' motions to dismiss I may also consider documents relevant to plaintiff's claims which are "attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006), quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004) (internal quotation marks and citations omitted).

"[a]t Safe Haven, plaintiff was assigned case manager Emmanuel Caesar, to assist and assure that I would be connected to services at the VA and to prepare me for the next level in my journey to obtain safe, affordable housing." Dkt. No. 20 at ECF p. 2-3. Plaintiff asserts that "[v]ery soon after getting to Safe Haven, plaintiff received his unemployment from EDD California" and that "[a]s soon as the unemployment started, I notified Mr. Caesar, who would not refer me for a HUD-VASH[ ] voucher." Id. at ECF p. 3. Plaintiff contends that Caesar "referred me to HAP (Homeless Advocacy Project), plaintiff was told they could not help or refer me to anyone either." Id. He claims that "Ms. Savage, lead case manager, . . . would not refer [him] either . . . ." Id.

Plaintiff asserts that "[o]n [a] letter dated June 6, 2013, . . . defendant Ms. Savage . . . stated 'it has become apparent that the Case Management offered at Safe Haven is not able to assist plaintiff in setting or meeting any goals or objectives that he may have in moving forward.'" Id. at ECF p. 4. He notes that the letter stated that "it has been determined that he would be discharged from Safe Haven on July 10, 2013." Id. Plaintiff alleges that he "complied with all the requirements and presented all the paperwork requested from the defendants and they still would not refer plaintiff for a HUD-VASH voucher." Id. at ECF p. 4-5. He asserts that upon his discharge, "with no voucher or referral, plaintiff ended up living in a vermin infested apartment." Id. at ECF p. 10. He contends that instead of receiving a referral under the HUD-VASH program he "was referred to IMPACT[,] a program for the severely mentally ill and or substance abuse [sic]." Id. at ECF p. 10. He contends, however, that he was diagnosed only as "stressed out and sometimes may be depressed but not suicidal or wanting [to] hurt anyone," id. at ECF p. 9, and that the VA "psychiatrist noted nothing unusual about [his] mental state" and "[t]here was no indication of substance abuse." Id. at ECF p. 10. Plaintiff alleges that he has

"not found where, [under the HUD-VASH program or the Hearth Act of 2009], a person that is enrolled in these programs can be involuntarily discharged because the Case Management offered at Safe Haven is not able to assist him." Id. at ECF p. 11.

Plaintiff also alleges that "defendants presented an Authorization for Release of Personal property, [which] g[ave] plaintiff (7) days upon involuntary discharge in which to retrieve his personal property or hold MinSec Safe Haven harmless in the event his property was lost, damaged or destroyed." Id. at ECF p. 5. Plaintiff claims that the release stated that "a letter for pickup of my personal belongings would be mailed via certified mail to" his "sister Senia Franklin" and his "Family friend Edith Lovell." Id. He alleges that "[n]o certified mail was sent to either of these contacts." Id. Plaintiff contends that following his involuntary discharge from Safe Haven, defendants "threw away my personal belongings and notified me that it was done and there is nothing else that could be done about it." Id. at ECF p. 8. Plaintiff alleges that defendants "knew how to get in contact with plaintiff, they had his phone no. and the address and phone numbers of his emergency contacts." Id. He asserts that "all agencies have the obligation if they can get in contact with a person, regardless of the Authorization of Release, has to get in contact with that person [sic]." Id. at ECF p. 8-9.

## STANDARD OF REVIEW

To survive defendants' motions to dismiss pursuant to Rule 12(b)(6), plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In evaluating defendants' motions, I must separate the legal and factual elements of plaintiff's claims, accept the well-pleaded factual allegations as true and disregard any legal conclusions. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.

2009). I "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211, quoting Iqbal, 556 U.S. at 679. A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'–'that the pleader is entitled to relief.'" Id. at 679, quoting Fed. R. Civ. P. 8(a)(2). Where, as here, plaintiff is proceeding pro se, I have "an obligation to construe the complaint liberally." Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013).

## DISCUSSION

**I.   Civil Conspiracy**

Plaintiff reasserts a claim for civil conspiracy in his second amended complaint.[2] Dkt. No. 20 at ECF p. 15-18. As the Court has previously explained, subsection (3) of Section 1985 provides a cause of action against a person who conspires "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). In his second amended complaint, plaintiff reasserts a claim for civil conspiracy, claiming, among other things, that "[t]he defendants by their actions deprived plaintiff of his ability to travel when he was deprived of his personal belongings" and that "[n]ot referring plaintiff for stable housing impeded plaintiff from traveling to attend to his legal and personal matters." Dkt. No. 20 at ECF p. 17.

---

[2]   The section of plaintiff's second amended complaint which specifically addresses "Civil Conspiracy" refers to all remaining defendants. Dkt. No. 20 at ECF p. 15-18.

-5-

Even as amended, plaintiff's claim regarding defendants' alleged conspiracy remains insufficient. "Agreement is the sine qua non of a conspiracy." Spencer v. Steinman, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997). The only allegation in plaintiff's second amended complaint which appears to be directed at his claim that defendants had the requisite agreement to conspire is plaintiff's new assertion that his discharge letter "had to be endorsed by all of [the] case managers at Safe Haven/VA." Id. at ECF p. 16. This allegation is not enough. As amended, the facts alleged in plaintiff's second amended complaint do "not permit the court to infer more than the mere possibility of misconduct . . . ." Iqbal, 556 U.S. at 679. "Mere conclusory allegations that a conspiracy existed will not survive a motion to dismiss." Boykin v. Bloomsburg Univ. of Pa., 893 F. Supp. 409, 418 (M.D. Pa. 1995), citing Rogin v. Bensalem Twp., 616 F.2d 680, 696 (3d Cir. 1980), aff'd without op., 91 F.3d 122 (3d Cir. 1996). I will dismiss plaintiff's civil conspiracy claim.

## II.  Claims Against the Federal Defendants

The Federal defendants again move to dismiss all claims directed against them. In his response to their motion, plaintiff argues that the Federal defendants "were aware of my involuntary discharge and of Safe Haven disposing of my personal property." Dkt. No. 27 at ECF p. 1. He asserts that "[t]he VA set the policies that Safe Haven has to follow, Mr. Gallagher as liaison and VA Medical Center are equally responsible for plaintiff['s] illegal discharge and not answering to this letter notifying them of Safe Haven disposing of his personal property." Id.

As the Court explained in its prior opinion, to the extent plaintiff asserts claims for money damages against the Department of Veterans Affairs or the Veterans Affairs Medical Center or against Gallagher in his official capacity, his claims are barred by the Eleventh

Amendment[3] and the doctrine of sovereign immunity.  "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."  FDIC v. Meyer, 510 U.S. 471, 475 (1994).  The United States has not waived immunity for suits seeking money damages for alleged constitutional violations.  See id. at 478; see also Mierzwa v. United States, 282 F. App'x 973, 976-77 (3d Cir. 2008) ("Neither the United States nor its agencies have waived sovereign immunity for constitutional claims.").

Moreover, to the extent that plaintiff's second amended complaint can be construed as asserting a claim for injunctive relief against the Federal defendants, it likewise fails to state a claim.  In Ex Parte Young, 209 U.S. 123 (1908), the Supreme Court carved out a limited exception to Eleventh Amendment sovereign immunity, in which "individual state officers can be sued in their official capacities for prospective injunctive and declaratory relief to end continuing or ongoing violations of federal law."  MCI Telecomm. Corp. v. Bell Atl.-Pa., 271 F.3d 491, 506 (3d Cir. 2001).  The "Eleventh Amendment" allegations in plaintiff's second amended complaint, see Dkt. No. 20 at ECF p. 12-15, are not sufficient to support application of the limited exception to Eleventh Amendment sovereign immunity.  Plaintiff has not alleged an ongoing violation of his rights, as he is no longer housed at Safe Haven and his belongings have already been removed.

Federal defendants also contend that plaintiff's second amended complaint still fails to state a claim for a violation of his constitutional rights as against defendant Gallagher in his individual capacity.  I agree.  Plaintiff's only allegation against Gallagher is that

> Mr. Gallagher is one of the social workers from the VA Medical Center that reviewed all of the residents [sic] cases that resided at

---

[3] The Eleventh Amendment to the United States Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign state."  U.S. Const. amend. XI.

> Safe Haven, and was aware or should have been aware of the letter issued to plaintiff discharging him from Safe Haven. . . . Mr. Gallagher had personal knowledge of my case because he had knowledge of the letter of my involuntary discharge and he received the fax letter from plaintiff notifying him, that they had disposed of plaintiff personal property some of it irreplaceable. . . . Mr. Gallagher did not did not answer to the fax.

Dkt. No. 20 at ECF p. 13-14.

As the Court has already explained, it is well established that a defendant must have personal involvement in the alleged wrongs to be held liable under § 1983. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence" and such allegations "must be made with appropriate particularity." Id. "[T]he mere fact that an official receives and reviews a letter . . . is insufficient to establish personal involvement (i.e., failure to respond or react does not establish that the official endorsed or acquiesced in the conduct at issue)." Hennis v. Varner, No. 12-646, 2014 WL 1317556, at *9 (W.D. Pa. Mar. 31, 2014). To this, plaintiff responds, "What could be more personal[,] a handshake?" Dkt. No. 20 at ECF p. 12. Plaintiff's rhetorical question aside, it is clear that it is not enough for plaintiff to simply say that "Gallagher had personal knowledge of [plaintiff's] case because he had knowledge of the letter of my involuntary discharge and he received the fax letter from plaintiff notifying him that they had disposed of plaintiff['s] personal property . . . ." Id. at ECF p. 13. See Adderly v. Harry, No. 13-1465, 2014 WL 4829085, at *4 (M.D. Pa. Sept. 29, 2014) ("alleging that an official failed to respond to a letter or request Plaintiff may have sent raising complaints is not enough to demonstrate that they had the requisite personal involvement"); Bullock v. Horn, No. 99-1402, 2000 WL 1839171 at *5 (M.D. Pa. Oct.31, 2000) (dismissing the plaintiff's claim where he sent various letters informing the defendants of his grievances and requesting assistance and made

-8-

conclusory allegations that a defendant "acquiesced in" and "enforced" the challenged actions); cf. Rode, 845 F.2d at 1208 (holding that the filing of a grievance against the Governor was not sufficient to show the actual knowledge necessary for personal involvement as "a contrary holding would subject the Governor to potential liability in any case in which an aggrieved employee merely transmitted a complaint to the Governor's office of administration or to the Lieutenant Governor's office").  Without more, plaintiff's allegations remain insufficient to allege a plausible claim that Gallagher should be held liable for a violation of plaintiff's rights under the Constitution.

Moreover, even if plaintiff's allegations were sufficient to plead Gallagher's personal involvement, Gallagher would be entitled to qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009), quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity is "broad in scope and protects 'all but the plainly incompetent or those who knowingly violate the law.'"  Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007), citing Couden v. Duffy, 446 F.3d 483, 501 (3d Cir. 2006).  Even assuming arguendo that plaintiff has alleged a constitutional deprivation, his allegations provide no basis for concluding that Gallagher had reason to know that, by failing to respond to plaintiff's faxed letter, he was violating one of plaintiff's clearly established rights.  I will grant the Federal defendants' motion to dismiss.

**III.   Claims Against the Safe Haven Defendants**

As with the Federal defendants, the Safe Haven defendants again move to dismiss all claims directed against them.  Dkt. No. 23.  They note that plaintiff was given leave to amend "a

possible Monell claim against Defendant Safe Haven/CEC" and "the claim that he was denied equal protection because of his race or national origin." [4]  Id. at ECF p. 5.  Defendants argue that "Plaintiff's second amended complaint does not appear to add or address these claims at all, instead presenting arguments to explain why defendants violated his rights by disposing of his property and refusing to refer Plaintiff to the HUD-VASH program."  Id.

Plaintiff responds that "[t]he right of the plaintiff was clearly established at the time to be housed at Safe Haven" and that it "was unreasonable despite Release form signed by the plaintiff for Safe Haven to dispose of my property, when they could have gotten in contact with plaintiff or his emergency contacts . . . "  Dkt. No. 24 at ECF p. 3-4.  He argues in his response to the Safe Haven defendants' motion that "the refusal to refer [him] to Hud-Vash, the involuntary discharge and the disposal of [his] personal property was in violation of [his] IV, V[5], XIV amendment [rights] and the Fair Housing Act.[6]"  Id. at ECF p. 6-7.

### A.   Monell Liability

Once again, I find that plaintiff's allegations are insufficient to support a section 1983

---

[4] As the Safe Haven defendants argue, "[p]laintiff's Second Amended Complaint fails to mention his Equal Protection Claim based on alleged discrimination, despite the fact that the Court permitted Plaintiff to amend his complaint on this issue."  Dkt. No. 28 at ECF p. 14. Absent any further allegations to support a claim that any of the Safe Haven defendants violated his right to equal protection, the Court is unable to infer a plausible claim that the denial of benefits which plaintiff claims was due to a denial of equal protection.

[5] "The limitations of the [F]ifth [A]mendment restrict only federal governmental action."  Nguyen v. U.S. Catholic Conference, 719 F.2d 52, 54 (3d Cir. 1983). Plaintiff cannot assert a viable § 1983 claim against the Safe Haven defendants based on a Fifth Amendment violation, because they are not federal officials.  See, e.g., Leventry v. Watts, No. 06-193, 2007 WL 1469038, at *2 (W.D. Pa. May 17, 2007) ("[T]he Fifth Amendment restricts the actions of federal officials, not state actors."); Kopchinski v. Green, No. 05-6695, 2006 WL 2228864, at *1 (E.D. Pa. Aug. 2, 2006) (dismissing the plaintiff's Fifth Amendment claims because all of the defendants were state actors).

[6] The Federal Fair Housing Act bars discrimination in the sale or rental of housing. 42 U.S.C. § 3604 (titled "Discrimination in the sale or rental of housing and other prohibited practices").  Plaintiff does not allege discrimination in connection with the sale or rental of housing, accordingly, he has not set forth a plausible claim under the Fair Housing Act.

claim against Safe Haven because plaintiff has not alleged sufficient facts to support a plausible claim that any constitutional deprivations he claims were the result of a Safe Haven custom or policy. Section 1983 provides for the imposition of liability on any person who, acting under color of state law, "deprives another of rights privileges or immunities secured by the Constitution or laws of the United States." 42 U.S.C. § 1983. "Under Monell v. Dep't of Social Services, 436 U.S. 658 (1978), a city, municipality, or private entity that is a state actor 'may not be held vicariously liable under § 1983 for the actions of its agents' because '[t]here is no respondeat superior theory of municipal liability.'" Regan v. Upper Darby Tp., 363 F. App'x 917, 922 (3d Cir. 2010), quoting Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006). As a private entity that is acting under color of state law, Safe Haven may be held liable "only if its policy or custom is the 'moving force' behind the constitutional violation." Sanford, 456 F.3d at 314.

Plaintiff has not alleged any new facts which would allow the Court to draw the reasonable inference that Safe Haven has a policy or custom of denying constitutional rights to the individuals in its care. He claims only: (1) that Safe Haven disposed of his personal belongings before contacting him or the individuals identified on his Authorization for Release of Personal Property; (2) that he was involuntarily discharged from Safe Haven; and (3) that he was denied referral to the HUD-VASH program. Instead of identifying an official policy, practice, usage, or custom of Safe Haven that he claims caused the aforementioned harms, in his response to the Safe Haven defendants' motion plaintiff again resorts to the use of rhetorical questions. He asks: "Was there a law in place . . . governing the defendant's [sic] conduct? What law was in place when defendants issued a 'voluntary discharge'?" Dkt. No. 24 at ECF p. 3. Plaintiff argues that he could not find a "policy. Procedure, regulation or tenet . . . in Safe

Haven/VA, Hud-Vash or Hearth Act of 2009[7] that explains the reasons for the 'involuntary discharge.'" Id. Neither plaintiff's questions nor his amended allegations are sufficient to raise a viable claim pursuant to Monell. See, e.g., Williams v. Fields, No. 09-0781, 2009 WL 3497772, at *3 (E.D. Pa. Oct. 27, 2009) (finding no Monell liability where the plaintiff failed to allege a relevant policy or custom); Silverman v. Physician Health Service--SCI-Waymart, No. 08-01841, 2009 WL 1324039, at *3 (M.D. Pa. May 11, 2009) (finding no Monell liability where the plaintiff's allegations "merely identif[ied] what appears to be an isolated incident"). Accordingly, I will dismiss plaintiff's Section 1983 claims against Safe Haven.

## B. Due Process

Plaintiff contends that his personal property was "disposed of in violation of his . . . right of 'due process.'" Dkt. No. 20 at ECF p. 11-12; see also Dkt. No. 4 at ECF p. 1-2. Arguably, he also asserts a claim that his right to due process was violated when he was discharged from Safe Haven and denied a referral for the HUD-VASH program. The Safe Haven defendants argue that "[p]laintiff fails to state sufficient facts to support any of these theories and dismissal of his claims are proper." Dkt. No. 23 at ECF p. 11.

On June 6, 2013, defendant Savage wrote plaintiff a letter explaining "[i]t ha[d] become apparent that the Case Management offered at Safe Haven is not able to assist [plaintiff[ in setting or meeting any goals or objectives that [he] may have in moving forward." Dkt. No. 3 at ECF p. 20 (Compl. Ex. D). Accordingly, the letter notified plaintiff that "it ha[d] been

---

[7] To the extent that plaintiff again seeks to assert a claim that defendants violated the HEARTH Act, 42 U.S.C. § 11301, by discharging him from Safe Haven and not providing him with a referral to the HUD-VASH program, his claim must be dismissed. As the court explained in Richardson v. City of N.Y., "the HEARTH Act does not create enforceable individual rights." No. 12-2545, 2013 WL 2124176, at *3 (S.D.N.Y. Apr. 17, 2013). Plaintiff may not seek to recover under the HEARTH Act because "where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." Gonzaga Univ. v. Doe, 536 U.S. 273, 286 (2002).

determined that [he] w[ould] be discharged from Safe Haven on July 10, 2013 if [he] fail[ed] to 1) address [his] mental health issues, [and] 2) provide [his] Case Manager with clear thought out goals and objectives that he c[ould] assist [plaintiff] in obtaining, particularly housing options." Id.  The letter also informed plaintiff that "due to shortage of space, we will not be able to store your personal belongings."  Id.

"Procedural due process guarantees that a state will not deprive an individual of a protected interest in property without due process of law . . . ."  Aultman v. Cmty. Educ. Centers Inc., 606 F. App'x 665, 668 (3d Cir. 2015).  "The essential requirements of any procedural due process claim are notice and the opportunity to be heard."  Zappan v. Pennsylvania Bd. of Prob. and Parole, 152 F. App'x. 211, 220 (3d Cir. 2005).  To establish a prima facie case of a procedural due process violation plaintiff "must allege state sponsored deprivation of a protected interest in life, liberty or property.  If such an interest has been or will be deprived, procedural due process requires that the governmental unit provide the individual with notice and a reasonable opportunity to be heard."  Rusnak v. Williams, 44 F.. App'x. 555, 558 (3d Cir. 2002) (citation omitted).

The Safe Haven defendants argue that "plaintiff has failed to suggest facts to support the claim that he was not given due process when he was asked to leave Safe Haven."  Dkt. No. 23 at ECF p. 12.  Likewise, the Safe Haven defendants argue that they did not deprive plaintiff of his personal property without due process under the terms of the executed Authorization for Release of Personal Property which explained that

> I understand that MinSec Safe Haven will retain my property for a maximum of seven (7) days upon involuntary discharge from the program.  I will hold MinSec Safe Haven and it's [sic] employees harmless in the event my property is lost, damaged, or destroyed.  I understand that a letter for pickup of my personal belongings will be mailed via certified mail to the addressee [identified on the

      authorization.]

Dkt. No. 3 at ECF p. 12 (Compl. Ex. A.).

      Plaintiff responds that "Safe Haven . . . discharging plaintiff involuntarily, when there was no regulation or policy stating when and how someone should be discharge[d] and not responding to plaintiff['s] inquiries about his personal property is a violation of his XIV amendment right of due process." Dkt. No. 24 at ECF p. 5. He argues that "defendants state that plaintiff did not follow the requirements of the program" but that he "refused to go to [I]mpact because the program at Impact is [a] chronically unemployed, mentally ill or substance abuse program" and Safe Haven knew "that plaintiff is not mentally ill and there w[ere] no signs of substance abuse." Id. at ECF p. 5-6. He also argues that defendants "should have at least answered to [his] inquiries about his personal property." Id. at ECF p. 5.

      Assuming arguendo that plaintiff has a property interest in his admission into Safe Haven, his second amended complaint fails to state a claim that he suffered a violation of his right to due process when he was asked to leave Safe Haven. Plaintiff was given notice of the Safe Haven defendants' intention to discharge him from the program and was informed of the steps he would be required to undertake in order to remain at Safe Haven. See Dkt. No. 3 at ECF p. 20 (Compl. Ex. D). "In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000). Plaintiff has not set forth any new allegations which would be sufficient to state a plausible claim that he was not given due process prior to his involuntary discharge.

      Likewise, although it remains unfortunate that plaintiff has been deprived of his personal property, property which he has alleged included irreplaceable items and items of sentimental

value, he has not sufficiently alleged a plausible violation of his right to due process with respect to his personal belongings.  Plaintiff had notice of Safe Haven's property disposition procedure prior to his separation from the facility and he had an adequate opportunity to return to Safe Haven to reclaim his belongings.  See id.  ("If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants.").  Plaintiff's due process claim will be dismissed.

## IV.    Dismissal With Prejudice

Plaintiff's claims will be dismissed with prejudice.  Plaintiff has already been afforded an opportunity to amend his complaint and state a legally sufficient basis for his claims.  To allow further amendment would be futile and/or inequitable.  See Alston v. Parker, 363 F.3d 229, 235–36 (3d Cir. 2004) ("[E]ven when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile."); see also Baumgardner v. Ebbert, No. 13-2107, 2013 WL 4047436, at *3 n.2 (3d Cir. 2013) ("Having had two opportunities to amend his complaint, we agree with the District Court that allowing Baumgardner to amend for a third time would be futile.").

An appropriate Order follows.